HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NICOLE A. QUINTANILLA,<br><br>     Plaintiff,<br><br>  v.<br><br>THE BUREAUS, INC., et al.,<br><br>     Defendant. | CASE NO. 3:19-cv-05161-RBL<br><br>ORDER GRANTING MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)<br><br>DKT. #18 |

**INTRODUCTION**

THIS MATTER is before the Court on Defendants The Bureaus, Inc. ("TBI"), Bureaus Investment Group Portfolio No. 15, LLC ("BIG 15"), and Bureaus Investment Group III's ("BIG III") Motion to Dismiss for Pursuant to Rule 12(b)(6). Dkt. #18. Plaintiff Nicole A. Quintanilla's claims challenge a letter sent by counsel for TBI representing that BIG 15 owns a $1,807.22 debt owed by Quintanilla. According to Quintanilla, the documents provided to verify BIG 15's ownership of the debt were insufficient authentication. The moving Defendants (collectively "The Bureaus") argue that the documents provided to Quintanilla support BIG 15's ownership of the debt and Quintanilla is not legally entitled to additional proof.

The Court agrees with the Bureaus and GRANTS their Motion.

## BACKGROUND

At some unknown time, Quintanilla alleges that "the Defendants" contacted her either through the mail or by telephone to attempt to collect a debt originally owed by Capital One, NA, for charges made on an HSBC retail account. Quintanilla also apparently became aware that The Bureaus had furnished information about her debt to a credit bureau. On October 30, 2018, Quintanilla sent a letter to TBI demanding authentic proof that they had a valid claim against her. Dkt. #19 at 8. Her letter identified no legal authority or specific documents for authentication.

TBI, the master servicer for BIG 15, responded on November 6 with a brief letter stating the open date for the account, the date of delinquency, the last payment prior to acquisition, the charge-off balance and date, and the current balance due. *Id*. at 11. The letter also contained numerous attached documents evidencing that the debt in question was owed by Quintanilla and was transferred to BIG 15. These documents included a Bill of Sale and Affidavit of Sale signed by the vice president of Capital One, NA, a Certificate of Conformity stating that the sale conformed to Virginia law, an Affidavit of Assignment signed by a Capital One Services, LLC, employee verifying that Quintanilla's account was transferred to BIG 15, a copy of a check from Quintanilla to HSBC Retail Card Services making a payment on the debt, and copies of Quintanilla's account statements showing payments and failures to pay. *Id*. at 12-22. Quintanilla's account was apparently sold as part of a pool of debts that Capital One sold to BIG 15.

Unsatisfied with this response, Quintanilla had her lawyer, Bruce Clark, reach out to TBI on November 27. TBI's counsel, Dara Tarkowski, responded on December 5, with a letter reiterating that BIG 15 owned the debt in question. *Id*. at 5-6. Tarkowski's letter included the

November 6 letter and all of its documentation as attachments. The letter also characterized Quintanilla's October 30 letter as a "debt validation request."

In her Complaint, Quintanilla claims that the December 5 letter from Tarkowski misrepresented that Defendants actually own Quintanilla's debt. Quintanilla alleges that Defendants failed to produce "*any* authenticatable documentation" in response to her inquiries and characterized the documents attached to the December 5 letter as "hearsay." Dkt. #1-1 at 6. The Complaint asserts more specific issues with the documentation, including that the Bill of Sale and Affidavit of Sale do not specifically mention Quintanilla or her account and reference a "Forward Flow Receivable Sale Agreement" between Capital One and the BIG 15 that was never produced to Quintanilla. Although the Affidavit of Assignment does identify Quintanilla and her account, Quintanilla claims that this document is not specific enough and is not reliable because it is not signed by an employee of Capital One, NA. Notably, Quintanilla does not deny that she owes the relevant debt.

## DISCUSSION

**1.     Legal Standard**

Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although the court must accept as true the Complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper

1 12(b)(6) motion to dismiss. *Vazquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citing *id.*).

Allegations of "fraud or mistake" trigger a heightened pleading standard under which the plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This means "the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Sections of the FDCPA that require a showing of false or misleading communications must be pled with particularity under Rule 9(b). *Cutler ex rel. Jay v. Sallie Mae, Inc.*, No. EDCV-13-2142-MWF, 2014 WL 7745878, at *3 (C.D. Cal. Sept. 9, 2014). RICO claims may also be subject to Rule 9(b)'s requirements if they involve fraud. *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989).

On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, leave to amend should be denied as futile if "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim

or defense." *Gaskill v. Travelers Ins. Co.*, No. C11-5847 RJB, 2012 WL 1605221, at *2 (W.D. Wash. May 8, 2012) (citing *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1393 (9th Cir.1997)).

**2.      Fair Debt Collection Practices Act Claim**

To state a claim under the FDCPA, a plaintiff must show: "(1) the plaintiff has been the object of collection activity arising from a consumer debt, (2) the defendant collecting the 'debt' is a 'debt collector' as defined in the Act, and (3) the defendant has engaged in any act or omission in violation of the prohibitions or requirements of the act." *Yrok Gee Au Chan v. North American Collectors, Inc.*, 2006 WL 778642, at *3 (N.D. Cal. March 24, 2006). The FDCPA defines "debt collector" as any entity that "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due [to] another." 15 U.S.C. § 1692a(6). The Complaint cites two sections of the FDCPA: 15 U.S.C. §§ 1692e(2)(A) and 1692f(1) as bases for Quintanilla's claims. Section 1692e(2)(A) provides that a debt collector may not falsely represent "the character, amount, or legal status of any debt." Section 1692f(1) prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

Quintanilla's Complaint falls far short of these requirements. First, Quintanilla fails to plausibly allege that The Bureaus violated the FDCPA. Her nit-picky grievances with the documents attached to Tarkowski's letter, documents that The Bureaus were not even obligated to produce under 15 U.S.C. § 1692g, do not plausibly indicate that Tarkowski misrepresented BIG 15's ownership of the debt. In fact, the documents show that Quintanilla's debt was sold to BIG 15. For example, the Affidavit of Assignment identifies Quintanilla by name, provides the last 4 digits of her account, specifies the amount owed, and certifies that Capital One assigned

the debt to BIG 15. Dkt. #19 at 14. The fact that it was signed by an employee of Capital One Services, LLC, an agent of Capital One, NA, does not diminish its veracity. Quintanilla's fixation on the "Forward Flow Agreement" is equally unavailing. Quintanilla is inexplicably convinced that this document "proves all of the Complaint's allegations against Defendants with respect to misrepresentations" but provides absolutely no basis for that conviction. Dkt. #22 at 1.

Quintanilla simply cannot claim that The Bureaus misrepresented owning her debt when they complied with all legal validation requirements and Quintanilla has no independent reason for believing the debt was not sold. *See Vien-Phuong Thi Ho v. ReconTrust Co., NA*, 858 F.3d 568, 589 (9th Cir.) ("[A]a debt collector satisfied section 1692g(b) by sending a letter to the debtor that included the debtor's address, the date of the deed of trust, and the name and address of the original creditor."). Quintanilla bafflingly argues that "nothing in the FDCPA prohibits a collector from being responsive to a consumer who has asked the collector for authenticatable proof of their claim." Dkt. #22 at 20. Indeed. However, there is also nothing in the FDCPA that *obligates* an entity to satisfy a debtor's every whim when it comes to authentication.

Second, Quintanilla's Complaint fails to satisfy several basic predicates for a viable FDCPA claim. The Ninth Circuit has held that "communications directed solely to a debtor's attorney are not actionable under the Act." *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007). Here, the complained-of letter was directed to Quintanilla's counsel, Bruce Clark. Quintanilla also fails to allege anywhere in her Complaint that any of the Defendants are debt collectors for purpose of the FDCPA. Finally, Quintanilla fails to satisfy Rule 9(b)'s specific pleading requirements with respect to BIG 15 and BIG III's role in the alleged misrepresentations. For all these reasons, Quintanilla's FDCPA claim against The Bureaus is dismissed.

### 3. RICO Claim

To violate RICO, "[a] conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000). To state a claim based on conspiracy under 18 U.S.C. § 1962(d), "Plaintiffs must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Id.* "A violation of section 1962(d) is demonstrated when 'the factual allegations of the complaint, including the words, actions, and relationship between the parties . . . raise[s] an inference that an agreement exists.'" *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, No. C10-861 RSM, 2011 WL 31862, at *9 (W.D. Wash. Jan. 3, 2011) (quoting *In re Park West Galleries, Inc.*, 2010 WL 2639849 * 2 (W.D. Wash. June 25, 2010)).

A defendant may also violate § 1962(a), (b), or (c) directly. A claim under § 1962(c) requires alleging the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."[1] *Straightshot Commc'ns Inc. v. Telekenex, Inc.*, No. C10-268Z, 2010 WL 11488936, at *3 (W.D. Wash. Nov. 15, 2010). A plaintiff must also plead the existence of an "enterprise," i.e. "a group of persons associated together for the common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). Mail fraud and wire fraud fall within RICO's definition of "racketeering activity." 18 U.S.C. § 1961(1). Finally, the plaintiff must allege that the racketeering activity proximately caused their injury. *Straightshot*, 2010 WL 11488936, at *3.

---

[1] Quintanilla's Complaint does not specify which subsection of § 1962 supports her claim, but the Court agrees with the Bureaus that § 1962(c) is the closest fit.

1    Quintanilla's Complaint fails to satisfy any of these requirements. Her allegations
2    regarding a supposed agreement between the Defendants amounts to nothing more than
3    conjecture and speculation. Quintanilla also does not explain how the Defendants collectively
4    make up an enterprise or how she was injured by their conduct. But perhaps most importantly,
5    Quintanilla does not plausibly describe a pattern of racketeering activity. For reasons already
6    explained, Quintanilla's grievances with the documents attached to one solitary letter do not
7    indicate a "scheme or artifice to defraud," much less a pattern of fraud. *See Sanford v.*
8    *MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010) (stating the elements for wire or mail
9    fraud). Quintanilla's RICO claim is therefore dismissed.

**4.   Consumer Protection Act Claim**

"To establish a violation of the CPA, a private plaintiff must prove that: (i) the defendant engaged in an unfair or deceptive act or practice; (ii) such act or practice occurred within a trade or business; (iii) such act or practice affected the public interest; (iv) the plaintiff suffered an injury to his or her business or property; and (v) a causal relationship exists between the defendant's act or practice and the plaintiff's injury." *Syria v. AllianceOne Receivables Mgmt., Inc.*, No. C17-1139 TSZ, 2018 WL 3455499, at *2 (W.D. Wash. July 18, 2018) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 785-93, 719 P.2d 531 (1986)). A plaintiff may allege that an act or practice is unfair or deceptive by showing that the defendant misrepresented their product or service somehow. *See, e.g., Nordstrom, Inc. v. Tampourlos*, 107 Wash. 2d 735, 739, 733 P.2d 208, 210 (1987) (finding that appropriation of Nordstrom's name misled consumers).

A plaintiff also may claim that an act or practice is per se unfair or deceptive based on the violation of certain legislatively-identified statutes, such as the Collection Agency Act (CAA),

RCW 19.16 *et seq. Syria*, 2018 WL 3455499, at *3. The CAA, which is Washington's counterpart to the federal FDCPA, contains a list of "prohibited practices" that are per se unfair or deceptive. RCW 19.16.250; RCW 19.16.440. One of those prohibited practices is "Threaten[ing] to take any action against the debtor which the licensee cannot legally take at the time the threat is made." RCW 19.16.250(16).

Here, Quintanilla has failed to state a claim under the CPA. First, she has not alleged that the representations in Tarkowski's letter caused any injury to Quintanilla's business or property. Second, she has not shown that the December 5 letter constitutes an unfair or deceptive trade practice. The documents provided with the letter evidence that BIG 15 does indeed own the debt in question and Quintanilla alleges nothing suggesting otherwise. Quintanilla's CPA claim is dismissed.

## CONCLUSION

For the above reasons, Quintanilla's claims against The Bureaus are DISMISSED with prejudice. Because the Court sees no possibility of Quintanilla curing the defects in her claims, leave to amend is denied.

IT IS SO ORDERED.

Dated this 11th day of July, 2019.

Ronald B. Leighton
United States District Judge

DKT. #18 - 9